Case 3:14-cv-02325-RDM-CA Document 15 Filed 06/03/16 Page 1 of 13

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM SOLOMON LEWIS, | : | Civil No. 3:14-cv-2325 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN, U.S.P. CANAAN, | : | |
| Respondent | : | |

**MEMORANDUM**

Presently before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, William Solomon Lewis, an inmate currently confined at the Canaan United States Penitentiary, in Waymart, Pennsylvania ("USP-Canaan"). (Doc. 1). Named as the sole Respondent is the Warden at USP-Canaan. Lewis claims that his due process rights were violated in the context of a prison disciplinary hearing. The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. Background

On November 2, 2011, Lewis was sentenced in the United States District Court for the Southern District of Texas to a 110-month term of imprisonment for possession of an unregistered firearm. (Doc. 5-1, Declaration of Michael FiggsGanter, Attorney Advisor at the Bureau of Prisons ("BOP") ("FiggsGanter Decl."), ¶ 3; Doc. 5-1, Ex. 1, Attach. A, Public Information Inmate Data). His projected release date is February 21, 2019, via good conduct time. (*Id.*).

Case 3:14-cv-02325-RDM-CA Document 15 Filed 06/03/16 Page 2 of 13

In the instant petition, Lewis claims that his rights were violated during the course of a prison disciplinary hearing held at the Coleman United States Penitentiary, Sumterville, Florida ("USP-Coleman"). (Doc. 1). Lewis challenges Incident Report Number 2381080. (*Id.*).

## II. Discussion

Respondent argues that the petition should be denied on the merits because "some evidence" supports the findings of the Discipline Hearing Officer ("DHO") regarding Incident Report Number 2381080. (Doc. 5, pp. 5-12).

On November 30, 2012, Lewis was served with Incident Report Number 2381080 charging him with a code 203 violation for "threatening another with bodily harm," and a code 307 violation for "refusing to obey an order." (Doc. 5-1, Ex. 1, Attach. C). The incident report describes the incident as follows:

> On 11/29/2012 at 6:10 PM, I, Recreation Specialist Anderson, instructed inmate Lewis, William # 73998-279 to remove his headgear before entering recreation area during the south side activities move. Inmate Lewis stated, "Why do I have to remove my hat?" Inmate Lewis removed his headgear upon entering the recreation area. At 6:25 PM, while conducting security rounds in the recreation area, I saw inmate Lewis with his headgear on while standing on the exercise machine in the recreation gymnasium area. As I approached inmate Lewis, I instructed him to remove his headgear. Inmate Lewis continued to stand on the exercise machine with his headgear on stating, "I don't have to remove my hat." Inmate Lewis was instructed to leave the recreation area and report to the lieutenant's office. Upon exiting the recreation area, Inmate Lewis began stating aggressive and threatening racial words, "You black b*tch, I don't have to take sh*t off!! It's always you black b*tches trying to run something! You don't know who I am! I am a

Case 3:14-cv-02325-RDM-CA Document 15 Filed 06/03/16 Page 3 of 13

> motherf***ing white man who can get you're a** f***ed up on this yard, you black b*tch! Black b*tches don't tell me what to do!"

(Doc. 5-1, Ex. 1, Attach. C).

On November 30, 2012, Lieutenant Evans gave Lewis advanced written notice of the charges against him. (Doc. 5-1, FiggsGanter Decl. ¶ 6; Doc. 5-1, Ex. 1, Attach. D).

A preliminary investigation was conducted and Lewis was advised of his right to remain silent, and he indicated that he understood his rights. (Doc. 5-1, Ex. 1, Attach. C). During the investigation, Lewis stated: "The only thing I said was she was a 'Black B*tch.' But I never said any of that other stuff. I never threatened her. I want the cameras to show my lips saying that." (*Id.*). The incident was then forwarded to the Unit Discipline Committee ("UDC"). (*Id.*).

On December 5, 2012, Lewis appeared before the UDC. (Doc. 5-1, Ex. 1, Attach. D). He was again advised of his rights, and stated "I did not threaten anyone. The video will show the conversation was only two sentences long. Short sentences." (Doc. 5-1, Ex. 1, Attach. C). The UDC referred the charge to the DHO due to the seriousness of the allegations. (*Id.*). During the UDC hearing, a staff member informed Lewis of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (*Id.*, Inmate Rights at Discipline Hearing). Lewis signed for his copy of the "Inmate Rights at Discipline Hearing" form. (*Id.*). Lewis was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (*Id.*, Notice of

Case 3:14-cv-02325-RDM-CA   Document 15   Filed 06/03/16   Page 4 of 13

Discipline Hearing before the Discipline Hearing Officer (DHO)). Lewis requested to have a staff member represent him and requested to call witnesses. (*Id.*).

A "Duties of Staff Representative" memorandum was prepared by the USP Coleman Warden for the staff representative, describing his responsibilities as a staff representative for Lewis. (*Id.*, Duties of Staff Representative Memorandum).

On January 8, 2013, Lewis appeared for a hearing before DHO W. White. (Doc. 5-1, Ex. 1, Attach. D, DHO Report). During the January 8, 2013 DHO hearing, the DHO confirmed that Lewis received advanced written notice of the charges on November 30, 2012, that he had been advised of his rights before the DHO by a staff member on December 5, 2012, and that Lewis requested a staff representative. (*Id.*). The DHO again advised Lewis of his rights, he indicated that he understood them, he stated that he had no documentary evidence to present, and that he was ready to proceed with the hearing. (*Id.*). Lewis denied the charges and his statement was summarized as follows:

> Inmate Lewis denied the charge to the DHO and stated, "The only thing I admit to is refusing an order b[y] refusing to take my hat off and calling her a black b*tch which is insolence. I made no threats. I said a total of 9 syllables as I walked out the door. I didn't say the 65 syllables as she stated. I was trying to get away from her because I know how she is."

(*Id.*).

In addressing Lewis' request for witnesses, the DHO found the following:

> He requested a few witnesses all of which submitted memorandums that they were either not on shift at the time or did not witness the altercation. These

> witnesses were Mr. Brown, Psychology; Chaplain Mai; Chaplain Murphy; and Officer A. Clark.

(*Id.*).

After consideration of the evidence, the DHO found that the greater weight of the evidence supported a finding that Lewis committed the prohibited acts of "threatening another with bodily harm", and "refusing to obey an order." (*Id.*). The DHO reasoned, in part, as follows:

> Although your staff representative reviewed the cameras, there are no audio capabilities on the cameras; therefore, there was no way to prove what statements came out of your mouth. In this case, the DHO gives greater weight to the staff member's account of the incident. The DHO finds the staff member's statement and observations are more credible and believable than that of yours, as the staff member's observation was made strictly in the performance of her duties and has no reason to make false accusations. The DHO finds no evidence, nor did you provide evidence, to indicate the staff member conspired to falsely accuse you of this misconduct. Lastly, the DHO determined that you had much to lose by accepting responsibility or being truthful in this matter, whereas the reporting officer is under a legal obligation to report truthful and accurate facts.

(*Id.*).

The DHO sanctioned Lewis on the code 203 violation with twenty-seven (27) days disallowance of good conduct time, thirty (30) days disciplinary segregation, ninety (90) days loss of commissary privileges, ninety (90) loss of telephone privileges, and thirty (30) days impounding of personal property. (*Id.*). The DHO sanctioned Lewis on the code 307 violation with thirty (30) days loss of commissary privileges. (*Id.*). The DHO documented

her reasons for the sanctions given as follows:

> Threatening a person with bodily harm whether directly or implied prevents that person from completing their assignments throughout the day without constantly watching or looking over their shoulders. In the past, when inmates have threatened others, they have carried out the threats. Inmates who threaten others in a correctional facility create a serious threat to institutional security and individual safety.
>
> The action/behavior on the part of any inmate to refuse to obey an order given by any staff member interferes with the staff member's ability to complete assignments and to effectively deal with and control the inmates in the assigned work area.
>
> The DHO disallowed good time for this act in order to meet your sentence requirements, (PLRA). The DHO imposed the sanctions of disciplinary segregation, the loss of commissary and telephone privileges, and impounded your personal property as punishment and to make you accountable for your actions.

(*Id.*).

At the conclusion of the hearing, Lewis was advised of his appeal rights. (*Id.*).

A. Due Process Claim

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. *Torres v. Fauver*, 292 F.3d 141 (3d Cir. 2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good

conduct time. *Id.* As Lewis' sanctions did include the loss of good conduct time, he has identified a liberty interest in this matter.

In *Wolff*, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457.[1]

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: *Inmate Discipline and Special Housing Units*. These procedures

---

[1] Lewis' statement that the *Hill* "some evidence" standard is no longer valid and "never existed in the federal system" is wholly unsubstantiated and meritless. (Doc. 6, at 6, 9-10).

are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a discipline hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. § 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the instant case, it is clear that Lewis was afforded all of the required procedural rights set forth in *Wolff*. He received timely notice of the incident report. 28 C.F.R. § 541.8(c). He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and request witnesses. 28 C.F.R. § 541.8(d), (e), (f). Lewis also received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. 28 C.F.R. § 541.8(h). Lewis was then notified of his right to appeal. 28 C.F.R. § 541.8(I). Lewis' Due Process claim is without merit as he was afforded all of the required procedural protections.

B. Sufficiency of the Evidence

Since Lewis was afforded all of his procedural rights, the Court must next determine whether there was "some evidence" to support the decision by the DHO. The record clearly reveals that there was sufficient evidence to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. Specifically, the DHO relied upon the incident report and supplemental memorandum, the staff eyewitness account, and Lewis' admission that he refused to obey an order and was insolent. (Doc. 5-1, Ex. 1, Attach. D). Although Lewis argues that the DHO failed to personally review the video evidence, Lewis' staff representative viewed the video on his behalf and provided a statement to the DHO. (Doc. 6, at 13-15). Further, although not expressly requested by Lewis, any suggestion that

the Court review the videotape of the incident must be denied. Such a request would essentially be a request for the Court to reexamine the record, reassess the credibility of the witnesses, and re-weigh the evidence. Pursuant to *Hill*, "[a]scertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." *Hill*, 472 U.S. at 455-56. The scope of this Court's review is limited to determining whether Lewis was afforded his due process rights. *See Wolff*, 418 U.S. 539. Therefore, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause. *See Lasko v. Holt*, 334 Fed. Appx. 474, 476 (3d Cir. 2009) ("Notably absent from the *Wolff* list of due process rights is a prisoner's right to review all potentially inculpatory evidence prior to the disciplinary hearing....").

C. Bias Claim

Lewis' claim that the DHO should have recused herself from the proceedings is baseless and lacks merit. (Doc. 1, at 7; Doc. 6, at 15-17). Lewis asserts that the DHO is biased because she is involved in a lawsuit, and she has personal relationships with prison staff members. (*Id.*). In order to ensure impartiality, the BOP regulations provide that "[t]he DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b). Additionally, for Due

Process purposes in prison disciplinary hearings, "the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in circumstances underlying the charge." *Speight v. Minor*, 245 Fed. Appx. 213 (3d Cir. 2007) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974)). There is no record of DHO White having any personal involvement in the circumstances underlying Lewis' charges of threatening another with bodily harm and refusing to obey an order. Lewis' conclusory allegations fail to demonstrate partiality or noncompliance with the BOP regulations. Lewis is not entitled to relief on his challenge to the impartiality of the DHO.

D. Sanctions

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Lewis was found guilty of a 200-level, high category prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 200-level offenses:

A. Recommend parole date rescission or retardation.
B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1 Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C. Disciplinary segregation (up to 6 months).
D. Make monetary restitution.

Case 3:14-cv-02325-RDM-CA Document 15 Filed 06/03/16 Page 12 of 13

E. Monetary fine.
F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.
M. Extra duty.

28 C.F.R. § 541.3 (Table 1).

Lewis was also found guilty of a 300-level, moderate category prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 300-level offenses:

A. Recommend parole date rescission or retardation.
B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 25% or up to 30 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
B.1 Disallow ordinarily up to 25% (1-14 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
C. Disciplinary segregation (up to 3 months).
D. Make monetary restitution.
E. Monetary fine.
F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
G. Change housing (quarters).
H. Remove from program and/or group activity.
I. Loss of job.
J. Impound inmate's personal property.
K. Confiscate contraband.
L. Restrict to quarters.

Case 3:14-cv-02325-RDM-CA Document 15 Filed 06/03/16 Page 13 of 13

M. Extra duty.

28 C.F.R. § 541.3 (Table 1). Thus, the sanctions imposed by the DHO were consistent with the severity level of the prohibited acts and within the maximum available to the DHO.

## III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

Date: June 2, 2016

Robert D. Mariani
United States District Judge